UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KIMBERLY HAVENS,

                Plaintiff,                                    Hon. Janet T. Neff

v.                                                Case No. 1:13-CV-938

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

_____/

## REPORT AND RECOMMENDATION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 47 years of age on her alleged disability onset date. (Tr. 191). She successfully completed high school and worked previously as a grocery store team leader, daycare provider, and deli worker. (Tr. 24-25). Plaintiff applied for benefits on July 27, 2010, alleging that she had been disabled since July 13, 2010, due to bi-polar disorder, schizophrenia, RSD[1], and left knee pain. (Tr. 191-205, 227). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 103-90). On February 3, 2012, Plaintiff appeared before ALJ James Prothro, with testimony being offered by Plaintiff and a vocational expert. (Tr. 31-74). In a written decision dated April 9, 2012, the ALJ determined that Plaintiff was not disabled. (Tr. 11-26). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On October 20, 2010, Plaintiff participated in a consultive examination conducted by Robert Griffith, Ph.D. (Tr. 321-26). Plaintiff reported that she was unable to work due to

---

[1] Reflex Sympathetic Dystrophy (RSD) is "a rare disorder of the sympathetic nervous system characterized by chronic, severe pain." *See* Reflex Sympathetic Dystrophy Syndrome, available at http://www.webmd.com/brain/reflex-sympathetic-dystrophy-syndrome (last visited on August 19, 2014).

schizophrenia and bipolar disorder.  (Tr. 321).  Plaintiff reported that she "hears voices" and

experiences "periods of depression and possibly irritability."  (Tr. 321).  Plaintiff appeared

"somewhat depressed," but the results of a mental status examination were otherwise unremarkable.

(Tr. 323-24).  The doctor also noted that "there was some exaggeration in her symptom presentation

today." (Tr. 323).  Plaintiff was diagnosed with mood disorder and personality disorder and her GAF

score was rated as 55.[2]  (Tr. 325).  With respect to Plaintiff's prognosis, Dr. Griffith reported as

follows:

> Unknown.  She was able to follow the conversation and interview,
> but demonstrated more apparent difficulties when responding to
> mental status questions.  Mood was reported to be a chief problem
> and a long term issue, with voices reported to be a more recent
> challenge, after she turned 40.  She is currently receiving treatment,
> but has not followed up with counseling.  Her main issue with
> treatment, according to her, has been financial.  She presents with
> contributing personality traits that may account for some of her
> reliability and follow through issues.

(Tr. 325).

On October 25, 2010, Plaintiff participated in a consultive examination conducted

by Dr. June Hillelson.  (Tr. 328-31).  Plaintiff reported that she was experiencing left knee pain.  (Tr.

328).  The results of a physical examination revealed the following:

> EXTREMITIES: No clubbing, cyanosis, or pretibial edema.
>
> Knees:  No overlying skin changes; no excessive warmth; no
> effusions, no ligamentous laxity and negative Drawer's test, however,
> patient could not fully extend the left knee; tender left knee exam;
> ranges of motion are as per attached sheets.

---

[2]  The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV).  A GAF score of 55 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning."  DSM-IV at 34.

Left foot: No overlying skin changes; no excessive warmth; no effusions; non-tender exam; ranges of motion are as per attached sheets.

NEUROLOGICAL EXAM: The patient was alert and oriented x3. Mentation was intact although formal mental status exam was not performed at this time. Manner, affect, and dress were appropriate. With cerebellar testing, namely finger to nose, this was performed without significant tremors, dysmetria, or pronator drift. Cranial nerves tested were grossly intact. Motor strength testing was 5/5 in all muscle groups tested in the upper and lower extremities. Sensory examination was intact to light touch except in the left distal lower extremity which was variable, with initial sensitivity to light touch and then without sensory abnormality. Deep tendon reflexes were 2/4 and symmetrical in the upper and lower extremities. The patient was able to ambulate under her own power, without using any external walking assist devices, and walked with a very slight limp favoring her left leg. She was unable to perform heel walking or toe walking, but tandem gait was normal. Rhomberg testing[3] was normal.

SPINE: Exam of the cervical and dorsolumbar spine revealed no paravertebral muscle spasm or gross abnormalities.

(Tr. 330). The doctor concluded as follows:

This patient has a history of chronic left knee pain, probably due to joint degeneration, a knee twisting that she was not immediately aware of, as well as stress on the joint due to habitus. Again, scar tissue or fibrosis might be a factor, particularly given that she could not fully extend the left knee. One might consider stretching the left knee under anesthesia as well as obtaining x-rays, sending her to physical therapy, encouraging weight loss, and providing analgesics.

On examination today, the left knee was tender on palpation and with range of motion testing. Range of motion was decreased in both flexion and extension, however, flexion was also decreased in the right knee, possibly due to habitus. She walked with a very slight limp. Nothing on examination was consistent with RSD.

---

[3] Romberg test is a neurological test designed to detect poor balance. *See* Romberg Test, available at http://www.mult-sclerosis.org/RombergTest.html (last visited on August 19, 2014). The patient stands with her feet together and eyes closed. The examiner will then push her slightly to determine whether she is able to compensate and regain her posture. *Id.*

> At this point in time, it is felt that this patient should be able to sit, stand, lift, bend, stoop, climb stairs, and walk.  She should avoid squatting, kneeling, and jumping.

(Tr. 331).

On January 21, 2011, Plaintiff participated in a duplex Doppler examination of her left lower extremity the results of which revealed "no sonographic evidence of deep venous thrombosis in the left lower extremity."  (Tr. 421-22).

On January 26, 2011, Plaintiff participated in an MRI examination of her left knee the results of which revealed:

1.    There is a region of abnormal marrow edema in the posterior aspect of the lateral femoral condyle.  Small linear areas of low signal in this region may reflect incomplete or partially healed fractures.

2.    Previous ACL reconstruction with intact ACL graft.

3.    Heterogeneous region of fluid and edematous change in the anterior prepatellar fat, probably representing a prepatellar hematoma with adjacent infiltrating edema or blood.

4.    Mild changes of osteoarthrosis in the patellofemoral joint.

5.    Focal signal abnormality in the infrapatellar fat pad that may reflect nodular synovitis.

(Tr. 418-20).

Treatment notes dated March 31, 2011, indicate that Plaintiff "won't go to counseling because they ask her to do things that she refuses to do: write in a journal."  (Tr. 404).

On April 13, 2011, Plaintiff was examined by Dr. Daniel Kokmeyer.  (Tr. 423-24).  Plaintiff reported that she injured her knee "back in January" and was still experiencing left knee pain.  (Tr. 423).  An examination revealed the following:

6

EXTREMITIES: Left knee was examined. The patient was exquisitely sensitive to the touching of the skin over the anterior knee and distally. According to her, this is unchanged. She had a dusky appearing anterior skin of the knee, but there is no erythema or warmth. She had no significant pain with range of motion; however, beyond 90 degrees of flexion, she was somewhat painful and had a flexion contracture approximately 15 degrees. The knee was stable to a drop leg Lachman's.[4] Distally sensation was intact and she had good skin tone. She was able to walk with a limp.

DIAGNOSTIC STUDIES:

IMAGING: X-ray imaging standing bilateral knees were obtained and reviewed. Left knee is difficult to interpret as the patient is flexing. However, there are no fractures appreciated. No significant osteoarthritic processes [are] appreciated. Postsurgical changes consistent with bone tunnels for ACL reconstruction are seen. MRI imaging of the left knee from Spectrum Hospital dated 01/26/2011 was also reviewed. This showed the lateral femoral condyle bony edema involving the posterior aspect of the lateral femoral condyle with a lucency concerning for a nondisplaced fracture. There is also prepatellar edema consistent with contusion and hematoma. Also, mild changes of the posterior horn of the medial meniscus, but no clear tear. Chronic changes to the infrapatellar fat pad noted to be possibly nodular synovitis by Radiology.

(Tr. 424). Dr. Kokmeyer concluded as follows:

Ms. Havens is a 47-year-old female with a history of chronic left knee pain status post ACL reconstruction with subsequent flexion contracture and who subsequently went on to develop regional pain syndrome. She had a fall back in January and sustained a contusion, also changes on MRI consistent with a nondisplaced posterior lateral femoral condyle fracture. On x-ray imaging today, this is not apparent. She is now nearly 10 weeks out from this injury and allowing for bony healing to have taken place.

(Tr. 424).

---

[4] Lachman's test assesses whether a patient has suffered a tear of the anterior cruciate ligament. *See, e.g.,* Physical Examination of the Knee, available at, http://www.webmd.com/pain-management/knee-pain/physical-examination-of-the-knee (last visited on August 19, 2014); Lachman's Test, available at http://www.fpnotebook.com/Ortho/Exam/LchmnTst.htm (last visited on August 19, 2014).

Treatment notes dated July 11, 2011 reveal the following:

> Kimberly A. Havens is a 48 y.o. female presents to the BHC for follow up on her psychiatric medications.  At last visit patient was switched from Celexa to Zoloft because of complaints of dry mouth. Since the switch she states that her dry mouth has drastically improved.  She does not notice an improvement in her mood, however.  She says "it is about the same."  She states that she stays in her room about 90% of the time.  It is difficult for her to leave the house as this causes her anxiety.  She also relates that she has more anxiety lately because of her current living situation.  Her roommates have asked her to leave by the end of the month.  She can go live with her mom or one of her kids but would like to have her own place. She currently has no source of income.  Patient states that she has suicidal ideations frequently.  She thinks about taking all her medications because sometimes "it's just not worth it anymore."  She has no active plan as of today.  She also states that she has 5 grandchildren and even though she thinks of suicide she wouldn't follow through with a plan.  Patient has been seen by Network 180 in the past but refuses to see them because she didn't like seeing so many different doctors.

(Tr. 352).

Treatment notes dated September 28, 2011, indicate that Plaintiff "continues to take Zoloft and Lithium which have been controlling her depression and bipolar disorder."  (Tr. 494). X-rays of Plaintiff's cervical spine, taken September 30, 2011, were "unremarkable."  (Tr. 498). Treatment notes dated November 2, 2011 indicate that Plaintiff's anxiety was "a lot better" since a recent change in her medication regimen.  (Tr. 473).  On December 23, 2011, Plaintiff participated in an MRI examination of her cervical spine the results of which revealed "mild degenerative disc change," but was "otherwise unremarkable."  (Tr. 507).

On January 20, 2012, Dr. Michael Septer provided a sworn statement regarding Plaintiff's impairments and limitations.  (Tr. 529-32).  With respect to Plaintiff's ability to "work regularly and consistently...eight hours a day, five days a week, week after week," the doctor

8

responded that "my opinion is that she would be able to engage in less than an hour to minutes per day, and she would often miss time throughout that work week for either mental/emotional difficulties or physical limitations due to her conditions." (Tr. 530). As for how long Plaintiff "could be on her feet throughout an eight hour day," the doctor responded that "with periodic unscheduled breaks, I would say a maximum of a couple hours." (Tr. 530). The doctor reported that Plaintiff could lift/carry "ten pounds maximum and under ten pounds occasionally." (Tr. 530). The doctor also reported that Plaintiff experiences "complete restriction" with respect to stooping, crawling, kneeling, squatting, and climbing stairs. (Tr. 530). The doctor reported that Plaintiff would "need unscheduled breaks during a typical eight hour work shift." (Tr. 531).

At the administrative hearing, Plaintiff testified that she experiences "constant" pain that is not relieved through medication. (Tr. 44-45, 54). Plaintiff also reported that she experiences multiple headaches weekly that likewise did not respond to medication. (Tr. 47). Plaintiff reported that she is "not a public person" and "get[s] angry fast" when she perceives people are not conducting themselves as she deems appropriate. (Tr. 48). With respect to her emotional issues, Plaintiff testified that on her current medication regimen "I don't get as angry at home and the voices are gone and I'm not suicidal anymore." (Tr. 50). She later testified that her emotional issues were "cleared up" on her current medications. (Tr. 52). Plaintiff reported that she experienced difficulty sleeping. (Tr. 53). Plaintiff reported that she experiences pain and swelling in her legs that necessitate that she keep her legs elevated for several hours daily. (Tr. 60-62). When asked why she was unable to work, Plaintiff responded, "[a]side from the pain it's people and I just don't like people." (Tr. 63-64).

9

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[5]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.  While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*,

---

[5] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) status post left knee surgeries in 2007 and 2008; (2) history of reflex sympathetic dystrophy of the left knee region; (3) obesity; (4) depression; (5) bipolar affective disorder; (6) status post fracture of the left femoral condyle; (7) headaches; and (8) tobacco abuse, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 14-16). The ALJ then concluded that Plaintiff retained the capacity to perform light work[6] subject to the following limitations: (1) she cannot climb ladders, ropes, or scaffolds; (2) she can only occasionally balance, stoop, kneel, crouch, crawl, or climb ramps or stairs; (3) she can perform simple, repetitive tasks; and (4) she is limited to only occasional contact with supervisors, co-workers, and the general public. (Tr. 16).

The ALJ determined that Plaintiff could not perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden.

---

[6] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

*O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).  This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.  *See Richardson*, 735 F.2d at 964.  Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 23,000 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding.  (Tr. 69-70).  This represents a significant number of jobs.  *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006).  The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.        **The ALJ's Adoption of the Prior RFC is Supported by Substantial Evidence**

Before submitting the claim for benefits presently at issue, Plaintiff previously applied for benefits.  Plaintiff's earlier application was denied on June 22, 2010, following a hearing, by ALJ Allen Erickson.  (Tr. 11).  In the opinion presently being challenged, ALJ Prothro adopted the RFC determination articulated by ALJ Erickson in the earlier denial.  (Tr. 11).  Plaintiff argues that it was error for ALJ Prothro to simply adopt the previous RFC determination.

In *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), the Sixth Circuit concluded that the principles of res judicata applied to decisions rendered by ALJs following an administrative hearing.  *Id.* at 840-42.  As the court observed, "[j]ust as a social security

claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner." *Id.* at 842. Accordingly, "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Id.*

Plaintiff argues that ALJ Prothro, rather than simply adopting the previous RFC determination, should have found that Plaintiff's condition had worsened following ALJ Erickson's decision and articulated a more restrictive RFC. Plaintiff has not demonstrated that her condition worsened subsequent to ALJ Erickson's decision. Moreover, ALJ Prothro did not simply blindly adopt ALJ Erickson's RFC finding, but instead examined the evidence in this matter in great detail and articulated how such supported Plaintiff's RFC. (Tr. 15-24). ALJ Prothro's RFC determination is consistent with the legal standard articulated above and is supported by substantial evidence. Accordingly, this argument is rejected.

## II.     The ALJ's Assessment of Plaintiff's Credibility is Supported by Substantial Evidence

At the administrative hearing, Plaintiff testified that she was impaired to a far greater degree than the ALJ recognized and was, therefore, unable to work. The ALJ accorded limited weight to Plaintiff's allegations on the ground that Plaintiff was not credible. (Tr. 22). Plaintiff asserts that the ALJ improperly discounted her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29,

2002) (same).   As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled."  20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009).  Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted).  This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms."  *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record."  *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference."  *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d

at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t

is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the

witnesses and weigh and evaluate their testimony").  It is not for this Court to reevaluate such

evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must

stand.  The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should

not be lightly disregarded.  *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780

(6th Cir. 1987).  In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative

law judge's credibility findings are virtually unchallengeable."  *Ritchie v. Commissioner of Social*

*Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

        With respect to Plaintiff's credibility, the ALJ stated that "the objective evidence does

not demonstrate the existence of limitations of such severity as to have precluded her from

performing all work on a regular and continuing basis at any time from the alleged onset date of

disability." (Tr. 22).  In support of this conclusion the ALJ discussed the medical evidence in detail

and articulated how such contradicted Plaintiff's allegations of extreme pain and limitation.  The

ALJ's observations and conclusions concerning Plaintiff's credibility are supported by substantial

evidence and comply with the standard articulated above.  In sum, the ALJ's decision to accord

limited weight to Plaintiff's subjective allegations is supported by substantial evidence.

**III.**        **The ALJ Failed to Properly Evaluate the Opinion Evidence**

        As noted above, Dr. Septer opined that Plaintiff was limited to a degree greater than

that recognized by the ALJ.  Specifically, the doctor reported that Plaintiff was unable to work for

more than one hour daily and "would often miss time throughout that work week for either

mental/emotional difficulties or physical limitations due to her conditions." The doctor reported that Plaintiff could lift/carry "ten pounds maximum and under ten pounds occasionally" and, moreover, would "need unscheduled breaks during a typical eight hour work shift." The ALJ afforded "little weight" to Dr. Septer's opinion. Plaintiff asserts that the ALJ failed to provide sufficient rationale for discounting Dr. Septer's opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

In discounting Dr. Septer's opinions, the ALJ stated only that "the objective evidence does not support the extreme limitations imposed upon the claimant by the doctor and the doctor has not provided any objective evidence to bolster his opinions." (Tr. 23). This conclusory statement

is the only examination or analysis the ALJ articulated concerning the substance of Dr. Septer's

opinions. As the Sixth Circuit has made clear, when an ALJ chooses to accord less than controlling

weight to the opinion of a treating physician, he must adequately articulate his rationale for doing

so. *See Wilson*, 378 F.3d at 544-47. As the *Wilson* court held:

> If the opinion of a treating source is not accorded controlling weight,
> an ALJ must apply certain factors - namely, the length of the
> treatment relationship and the frequency of examination, the nature
> and extent of the treatment relationship, supportability of the opinion,
> consistency of the opinion with the record as a whole, and the
> specialization of the treating source - in determining what weight to
> give the opinion.

> Importantly for this case, the regulation also contains a clear
> procedural requirement: "We will always give good reasons in our
> notice of determination or decision for the weight we give [the
> claimant's] treating source's opinion." A Social Security Ruling
> explains that, pursuant to this provision, a decision denying benefits
> "must contain specific reasons for the weight given to the treating
> source's medical opinion, supported by the evidence in the case
> record, and must be sufficiently specific to make clear to any
> subsequent reviewers the weight the adjudicator gave to the treating
> source's medical opinion and the reasons for that weight."

*Id.* at 544 (internal citations omitted).

As the *Wilson* court further held, failure to comply with this requirement is not subject

to harmless error analysis. *Id.* at 546-47. As the court expressly stated:

> A court cannot excuse the denial of a mandatory procedural
> protection simply because, as the Commissioner urges, there is
> sufficient evidence in the record for the ALJ to discount the treating
> source's opinion and, thus, a different outcome on remand is
> unlikely. . .To hold otherwise, and to recognize substantial evidence
> as a defense to non-compliance with § 1527(d)(2), would afford the
> Commissioner the ability [to] violate the regulation with impunity
> and render the protections promised therein illusory.

*Id.* at 546 (internal citations omitted).

The ALJ has failed to provide *specific* reasons for his assessment of the doctor's opinions, but instead merely offers the conclusion that the doctor's opinion is not supported by the objective evidence. Because the ALJ failed to articulate any specific rationale or, more importantly, identify any specific items in the record to support his conclusion, the Court simply cannot assess whether the ALJ's determination in this regard is supported by substantial evidence. While the Court (or Defendant) may be able to identify portions of the record that support the ALJ's assessment, the Court cannot find that the ALJ's conclusion is legally sufficient based upon such after-the-fact rationalizations. Instead, as *Wilson* makes clear, the task of articulating the rationale for discounting a treating physician's opinion rests with the ALJ.

In sum, the ALJ failed to articulate sufficient reasons for discounting Dr. Septer's opinion. In light of the fact that Dr. Septer's opinion is inconsistent with the ALJ's RFC determination, the ALJ's failure is not harmless. The ALJ's failure clearly violates the principle articulated in *Wilson* and renders his decision legally deficient.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

19

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  September 3, 2014

 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge

20